NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

INTERNATIONAL HOD CARRIERS,
BUILDING AND COMMON LABOR-
ERS' UNION OF AMERICA, LOCAL
1140, AFL–CIO, Respondent.

No. 16511.

United States Court of Appeals
Eighth Circuit.

Dec. 22, 1960.

Allan I. Mendelsohn, Atty., N. L. R. B., Washington, D. C., for National Labor Relations Board; Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown,

Jr., and Richard J. Scupi, Attys., N. L. R. B., Washington, D. C., on the brief.

Mozart G. Ratner, Washington, D. C., for respondents. David D. Weinberg, Omaha, Neb., on the brief.

Before WOODROUGH, VAN OOSTERHOUT, and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

We have for determination the narrow question of whether the cease and desist order entered by the Board is entitled to enforcement in its entirety. While conceding that the Board is entitled to enforcement of an appropriate order, the Union asserts that the order here entered is too broad.

A brief summary of the facts, as found by the Trial Examiner, and adopted by the Board, is sufficient to indicate that the order requires modification.

Peter Kiewit Sons' Company was a general contractor in charge of a construction job in Hallam, Nebraska. Several sub-contractors were also engaged in work on the same project. On or about April 27, 1959, steel forms rented by Kiewit from the firm of "Economy Forms" were delivered and unloaded at the site. During the afternoon of the next day, Union's business agent approached one Kullman, Kiewit's superintendent, and pointed to someone 50 feet away, stating: "You got a non-union man working over here, get him off the job by quitting time." Kullman replied to the effect that he was unaware of any non-union man being on the job, and suggested that it might be someone that Kiewit's foreman had hired to unload the forms. On the morning of April 29, pickets appeared at the project, and thereafter all work on the project was discontinued until mid-afternoon of May 1. The pickets carried signs bearing the legend:

Labors' Local 1140
On Strike For Contract
Again Economy Forms
Against This Contractor Only.

The Board further found that on April 29, Economy Forms made several futile attempts to contact the Union's agents by telephone, and that on April 30, the president of Economy Forms sent Union a telegram, advising that his company had a collective bargaining agreement for all of its production employees, and that it had no employees at the Hallam project.

Upon these facts, the Board found that Union's picketing at the Hallam project was designed to induce and encourage employees of all employers on the job to cease work, and to cause Kiewit to cease doing business with Economy Forms; that an object of the picketing was to force or require Economy Forms to recognize and bargain with Union, although it had not been certified as the collective bargaining representative of Economy Forms; and that by such conduct respondent had violated § 8(b) (4) (A) and (B) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 158(b) (4) (A) and (B).[1]

Pursuant to these findings, the Board ordered that Union should:

"Cease and desist from engaging in a strike, or inducing or encouraging the employees of Peter Kiewit Sons' Company, Natkin & Co., Miller Excavating Company, *or (of any employer) other than Economy Forms Corporation* to engage in a strike or a concerted refusal in the course of their employment to perform services for their employer, where an object thereof is (a) to force or require Peter Kiewit Sons'

---

1. The pertinent provisions of § 8(b) (4) (A) and (B), provide that it shall be an unfair labor practice for a union to induce or encourage employees of any employer to engage in a strike or concerted refusal to use, process, transport or otherwise handle work or goods, where an object thereof is to force union membership, or to require employers to recognize or bargain with a labor union, unless such union has been certified as the representative according to Section 9 of the Act, § 159 U.S.C.A. Title 29.

Company (*or any other employer or person*) to cease doing business with Economy Forms Corporation, and subcontractors to cease doing business with their general contractor, or (b) to force or require Economy Forms Corporation to recognize or bargain with the Respondent as the representative of its employees unless the Respondent has been certified as the representative of such employees under the provisions of Section 9 of the Act." (Emphasis supplied.)

On this appeal, the Union strenuously attacks the italicized portions of the above quoted order, urging that the Board was without authority to restrain unlawful practices which it had not found to be present, or practices which are not similar or fairly related to the violations which the Board did find. There is substance in this contention.

We can perceive of no useful purpose in engaging in an extended discussion of the pros and cons of the question. It is sufficient to say that the Board seems to persist in issuing broad orders as a matter of course, even without factual or legal basis. See, e. g., N. L. R. B. v. Ochoa Fertilizer Corp., 1 Cir., 1960, 283 F.2d 26, 29 where the Court was constrained to observe:

"In the aggregate this exhibits a marked fondness on the part of the Board for broad decrees. * * * In no case in which the record before us revealed the evidence available to the Board was there any evidence of similar misconduct directed towards other employers, or other labor organizations. On this substantial showing we must at least suspect that the Board uses the broad form of decree as a matter of course. This suspicion is confirmed by the Board's memoranda presently before us. We do not approve of such a practice."

The teachings of the Supreme Court, as reaffirmed in the recent case of Communications Workers of America v. N. L. R. B., 362 U.S. 479, 80 S.Ct. 838, 4 L.Ed.2d 896, should be sufficient to eliminate any question as to the limited authority of the Board to restrain practices of employers and unions. There, it was reiterated, 362 U.S. at pages 480–481, 80 S.Ct. at page 840: "'It would seem * * * clear that the authority conferred on the Board to restrain the practice which it has found * * * to have [been] committed is not an authority to restrain generally all other unlawful practices which it has neither found to have been pursued nor persuasively to be related to the proven unlawful conduct.' Labor Board v. Express Pub. Co., 312 U.S. 426, 433 (1941)."

That Union has engaged in an admittedly unlawful labor practice at the Hallam, Nebraska project, does not of course prove, or reasonably establish proof that respondent is engaged in a "generalized scheme" of illegal conduct, or has a "clear purpose" to engage in future violations of the Act. The Board made no finding that Union here had pursued other unlawful conduct or practices, nor is there any evidence in the record of a clear purpose to violate the Act, or an intention to do so in the future. To the contrary, the findings of the Trial Examiner indicate that Union's business agent "may have misunderstood what he was told by Superintendent Kullman of the general contractor, Peter Kiewit Sons' Company, *and by mistake ordered the picket line*." (Emphasis supplied.) See discussion and compilation of cases, May Department Stores Co. v. National Labor Relations Board, 326 U.S. 376, at pages 388–392, 66 S.Ct. 203, 90 L.Ed. 145.

Upon the record before us, we must rule that inclusion of the italicized words in the instant order was unwarranted, and the order is modified by striking the same therefrom, and by inserting the word "or" before "Miller Excavating Company" in the third line of the quoted order, as it appears on pages 395, 396. The modification shall also apply to the notices which respondent is required to post. As so modified, a decree shall issue enforcing the Board's order.