## HOUSTON INSULATION CONTRACTORS ASSO-CIATION *v.* NATIONAL LABOR RELATIONS BOARD.

No. 206. Argued January 19, 1967.—Decided April 17, 1967.*

---

*Together with No. 413, *National Labor Relations Board* v. *Houston Insulation Contractors Association,* also on certiorari to the same court.

*W. D. Deakins, Jr.,* argued the cause and filed briefs for petitioner in No. 206 and for respondent in No. 413.

*Norton J. Come* argued the cause for respondent in No. 206 and for petitioner in No. 413. With him on the brief were *Solicitor General Marshall, Arnold Ordman* and *Dominick L. Manoli.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

These are companion cases to Nos. 110 and 111, *National Woodwork Mfrs. Assn.* v. *NLRB,* and *NLRB* v. *National Woodwork Mfrs. Assn., ante,* p. 612. A provision of the collective bargaining agreement between the Houston Insulation Contractors Association and Local 22, International Association of Heat and Frost Insulators and Asbestos Workers, AFL–CIO, provides, in pertinent part, that the employer will not contract out work relating to "the preparation, distribution and application of pipe and boiler coverings." In No. 206,

the Contractors Association seeks review of the dismissal by the National Labor Relations Board, 148 N. L. R. B. 866, affirmed by the Court of Appeals for the Fifth Circuit, 357 F. 2d 182, 189, of § 8 (b)(4)(B) charges brought against Local 22 because of its activities designed to enforce the agreement. National Labor Relations Act, as amended, 73 Stat. 543. In No. 413, the Board challenges the holding of the Court of Appeals, reversing the Board, that similar conduct by a sister Local 113, designed to protect the work guaranteed to Local 22 by the agreement, violated § 8 (b)(4)(B). We granted both petitions and set them for argument with Nos. 110 and 111. We affirm in No. 206 and reverse in No. 413.

*No. 206:* Johns-Manville Company, a member of the Contractors Association, engaged in a construction project in Texas City, Texas, purchased from Techalloy Corporation, a manufacturer of insulation materials, stainless steel bands used to fasten asbestos material around pipes to be insulated. The bands had been precut to specification by Techalloy's employees. Customarily, Johns-Manville had ordered rolls of wire which were then cut to size by members of Local 22. The cutting work was reserved for Johns-Manville employee members of Local 22 by the quoted provision of the collective bargaining agreement between the Association and the Local. Agents of Local 22 instructed its members on the jobsite not to install the precut bands. After the hearing on the complaint issued on the Contractors Association's charge that this conduct violated § 8 (b)(4)(B), the Board held that "[t]he conduct complained of herein was taken to protest . . . a deprivation of work, its object being to protect or preserve for employees certain work customarily performed by them. This conduct constituted primary activity and is protected by the Act . . . ." 148 N. L. R. B., at 869. The Court of

Appeals found that there was substantial evidence to support this finding and sustained it.[1] The Association here attacks the substantiality of the evidence supporting the Board's finding, but we agree with the Court of Appeals. See *Universal Camera Corp.* v. *Labor Board,* 340 U. S. 474. In that circumstance our holding today in *National Woodwork Mfrs. Assn.* v. *NLRB, supra,* requires an affirmance in No. 206.

*No. 413:* Armstrong Company, a member of the Contractors Association, was engaged in a construction project in Victoria, Texas, within the jurisdiction of Local 113 of the Heat and Frost Insulators and Asbestos Workers. The cutting and mitering of asbestos fittings for such jobs was customarily performed at Armstrong's Houston shop, which was within Local 22's jurisdiction. Armstrong purchased from Thorpe Company, a manufacturer of insulation materials, asbestos fittings upon which the cutting and mitering work had already been performed. Agents of Local 113 informed Armstrong that fittings would not be installed unless the cutting and mitering had been performed by its sister Local 22 as provided by Local 22's bargaining agreement.[2] The Board found,

---

[1] The Association did not charge the Union with violation of § 8 (e) (73 Stat. 543), and the validity of the work-preservation clause was not an issue in the hearing before the Board. But the Board appears to have assumed that the clause was valid in holding that the object of the Union's conduct pursuant thereto was a primary one of work preservation. The Court of Appeals expressly held, as an aspect of its finding that § 8(b)(4)(B) was not violated by Local 22's activities, that the clause was valid. 357 F. 2d, at 188–189.

[2] A mitered fitting is described by the president of Thorpe Company as "an insulation item that is used to cover something other than a straight piece of pipe in a pipe line, and this is made by taking standard insulation pipe covering and cutting it on a bias or miter and then gluing it together or sticking it together so that it will conform to the fitting that you are trying to shape it to."

as it had in No. 206, that the object of this refusal was primary—the preservation of work customarily performed by Armstrong's own employees. 148 N. L. R. B., at 869. The Court of Appeals reversed on the ground that Local 113 "had no economic interest in Local 22's claim of breach of contract," and that therefore "it was coercing Armstrong not for its own benefit but for the benefit of another local at the expense of a neutral employer." 357 F. 2d, at 189. We disagree.

National Woodwork Mfrs., supra, holds that collective activity by employees of the primary employer, the object of which is to affect the labor policies of that primary employer, and not engaged in for its effect elsewhere, is protected primary activity. "Congress was not concerned to protect primary employers against pressures by disinterested unions, but rather to protect disinterested employers against direct pressures by any union." [3] The finding of the Board, supported by substantial evidence, was that Local 113's object was to influence Armstrong in a dispute with Armstrong employees, and not for its effect elsewhere.

Primary employees have traditionally been assured the right to take concerted action against their employer to gain the "mutual aid or protection" guaranteed by § 7 of the National Labor Relations Act, as amended, 61 Stat. 140, whether or not the resolution of the particular dispute directly affects all of them. As Judge Learned Hand stated in Labor Board v. Peter Cailler Kohler Swiss Chocolates Co., 130 F. 2d 503, 505–506:

"When all the other workmen in a shop make common cause with a fellow workman over his separate grievance, and go out on strike in his support, they engage in a 'concerted activity' for 'mutual

[3] United Association of Journeymen, Local 106 (Columbia-Southern Chemical Corporation), 110 N. L. R. B. 206, 209.

aid or protection,' although the aggrieved workman is the only one of them who has any immediate stake in the outcome. The rest know that by their action each one of them assures himself, in case his turn ever comes, of the support of the one whom they are all then helping; and the solidarity so established is 'mutual aid' in the most literal sense, as nobody doubts."

. A boycott cannot become secondary because engaged in by primary employees not directly affected by the dispute, or because only engaged in by some of the primary employees, and not the entire group. Since that situation does not involve the employer in a dispute not his own, his employees' conduct in support of their fellow employees is not secondary and, therefore, not a violation of § 8 (b)(4)(B).

The judgment of the Court of Appeals in No. 206 is affirmed and in No. 413 is reversed.

*It is so ordered.*

MR. JUSTICE BLACK, MR. JUSTICE DOUGLAS, MR. JUSTICE CLARK, and MR. JUSTICE STEWART dissent for the reasons expressed in MR. JUSTICE STEWART's dissenting opinion in *National Woodwork Mfrs. Assn.* v. *NLRB, ante,* p. 650.