**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL UNION NO. 28, SHEET METAL WORKERS' INTERNATIONAL ASSO-CIATION, AFL–CIO, and Mell Farrell, its President; Mechanical Contractors' Association of New York, Inc., and Sheet Metal Contractors Association of New York, Inc., Respondents.**

**Nos. 200, 201, Dockets 30563, 30564.**

United States Court of Appeals Second Circuit.

Argued Nov. 22, 1966.

Decided July 10, 1967.

Gary Green, Washington, D. C. (Arnold Ordman, Gen. Counsel, National Labor Relations Board, Dominick L. Manoli, Assoc. Gen. Counsel and Marcel Mallet-Prevost, Asst. Gen. Counsel, Washington, D. C.), for petitioner.

Samuel Harris Cohen, New York City (Leonard Leibowitz and Cohn & Glick-

stein, New York City, on the brief), for respondents.

Before WATERMAN, MOORE and HAYS, Circuit Judges.

HAYS, Circuit Judge:

The National Labor Relations Board seeks enforcement of an order based upon a finding of violation by all the respondents of Section 8(e) of the National Labor Relations Act, 29 U.S.C. § 158(e) [1] and by Local No. 28 and its President, Mell Farrell, of Section 8(b) (4) (ii) (A) and (B) of that Act, 29 U.S.C. § 158(b) (4) (ii) (A) and (B).[2] For reasons which are described hereafter we deny the Board's petition and set aside its order.

This case involves a controversy which arose in connection with the construction of a new building for Alexander's Department Store in New York City. George A. Fuller Company was the general contractor. Fuller subcontracted the heating, ventilating and air conditioning work to Kerby Saunders, Inc. and Kerby in turn engaged Johnson Service Company of Milwaukee, Wisconsin and National Sheet Metal Works, Inc. of Brooklyn, New York. Johnson was to furnish a temperature control system, including dampers [3] for the air conditioning, and National was to install the dampers and other sheet metal products. Kerby was a member of the Mechanical Contractors'

Association of New York, Inc. and National was a member of the Sheet Metal Contractors Association of New York, Inc. Both Mechanical and Sheet Metal Associations have collective bargaining agreements with Local 28, Sheet Metal Workers' International Association, AFL-CIO, which represents journeymen and apprentice sheet metal workers in the New York City area. Kerby and National, as members of the Associations, are, of course, parties to the collective agreements between Local 28 and the Associations. The employees of Johnson's Milwaukee plant are represented not by Local 28 but by Local 24, a sister local affiliated with the same international. Johnson consequently has no agreement with Local 28.

In Local 28's collective agreements with the Associations there is a clause designated Addendum B which sets forth a list of "fabricated items" and provides that these items are "to be manufactured by a Contractor having a signed Agreement with Local Union No. 28." Among the listed items are "dampers."

In the course of the construction of the Alexander building, Farrell, President of Local 28, told Fuller's construction superintendent that he, Farrell, could not find out who was manufacturing the dampers which Kerby was using on the job and that he "might have to pull the men off the job" if he didn't get this

1. Sec. 158(e). It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible and void * * *.

2. Sec. 158(b). It shall be an unfair labor practice for a labor organization or its agents—
   *   *   *   *   *
   (4) * * * (ii) to threaten, coerce, or restrain any person engaged in com-

merce or in an industry affecting commerce, where * * * an object thereof is—
   (A) forcing or requiring any employer * * * to enter into any agreement which is prohibited by subsection (e) of this section;
   (B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person * * *.

3. The function of a damper was described at the hearing as "to control the volume and pressure change of air flow in the conditioned air ducts in response to automatic control instruments measuring the air conditioning demands."

information within the next few days. Fuller's superintendent urged Kerby to get this matter straightened out and Kerby in turn warned Johnson. Johnson was providing the dampers, some of which were fabricated in Milwaukee and some in New York by Local 28 members.

Kerby's project manager arranged for a meeting between Farrell and the employers involved. At this meeting Farrell insisted that unless all dampers were made by Local 28 members he would "take the men off the job the next day."

The dispute was referred to the Joint Adjustment Board, composed of union representatives and employers who were members of the Associations. That Board urged Kerby and National to comply with Addendum B. Thereafter National's foreman on the job refused to accept a shipment of dampers from Johnson's Milwaukee plant. Kerby also refused to accept the Johnson dampers.

Johnson substituted dampers fabricated by members of Local 28 but filed charges with the National Labor Relations Board, alleging violation of Section 8(e) and Section 8(b)(4)(ii)(A) and (B) of the National Labor Relations Act.

The Board held that Addendum B contravened the provisions of Section 8(e) and that by threatening to strike unless the contractors ceased to use Johnson's dampers, the union and Farrell violated Section 8(b)(4)(ii)(A) and (B).

Since the charges were filed more than six months after the parties entered into the collective agreement of which Addendum B is a part, the Board did not find an unfair labor practice in the original negotiation and execution of Addendum B, but held that the subsequent application and enforcement of the clause in connection with the purchase of the dampers was a "reaffirmation" and constituted a fresh violation of Section 8(e).

We accept the Board's determination that the original inclusion of Addendum B in the collective agreements cannot be made the basis for the finding of an unfair labor practice because it occurred more than six months before the filing of the charges. National Labor Relations Act, Section 10(b), 29 U.S.C. § 160(b);[4] Local Lodge No. 1424 v. National Labor Relations Board, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960).

The briefs discuss the exact language of Addendum B and respondents concede that read literally the clause "on the face" appears to have a secondary purpose. The Board claims that it is a typical hot cargo agreement.

The literal terms of Addendum B would be important, perhaps even determinative, if the unfair labor practice of which defendants have been found guilty were the original inclusion of the clause in the collective agreements. But, as has been pointed out, the Board concedes that it cannot, consistently with the provisions of Section 10(b), base its case against these respondents on the original inclusion of the Addendum. The Board cannot hold subsequent application and enforcement of the clause to be an unlawful "reaffirmation" unless the situation to which the clause is subsequently applied is itself violative of the Act. A "reaffirmation" in the sense of a declaration of intent to enforce the clause at a suit-

4. Section 160.
* * * (b) Whenever it is charged that any person has engaged in or is engaging in any * * * unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five days after the serving of said complaint: *Provided,* That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made, unless the person aggrieved thereby was prevented from filing such charge by reason of service in the armed forces, in which event the six-month period shall be computed from the day of his discharge.

able time would not constitute an unfair labor practice which could properly be separated from the act of inclusion. See Local Lodge No. 1424 v. National Labor Relations Board, supra. A resort to the clause by the union in a situation to which the clause was irrelevant would be equally innocuous and, like a mere declaration of intent to enforce, would not effect a legally significant "reaffirmation." In the present case the Board could find in the union's reliance on Addendum B an unlawful "reaffirmation" of that clause and a violation of the Act only if the circumstances in which the union sought enforcement of the clause amounted to an attempt to control "hot cargo" in a manner itself forbidden by the Act. In other words, even if Farrell in demanding that National and Kerby not use Johnson's dampers based his claim on Addendum B, his action did not violate Section 8(e) of the Act unless the demand itself and compliance therewith by National and Kerby were the kind of unlawful activity to which Section 8(e) is addressed.

■ That Section 8(e) and Section 8(b) (4) (ii) (A) and (B) are not to be read literally as forbidding all agreements not to handle the products of other employers, is established by National Woodwork Manufacturers Association v. National Labor Relations Board, 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967) and Houston Insulation Contractors Association v. National Labor Relations Board, 386 U.S. 664, 87 S.Ct. 1278, 18 L. Ed.2d 389 (1967). Thoses cases hold that where the execution of an agreement between a union and an employer under which the employer is not to use the products of another employer is motivated by the desire to preserve work for the employees of the employer making the agreement, the object of the agreement is "primary" and the agreement is lawful. It is only where an agreement not to use the products of another employer is designed to bring pressure on *that* employer with respect to *his* employees that the agreement has a "secondary" purpose and is proscribed by Section 8(e).

In the *National Woodwork* case the Carpenters' Union and a contractor had a collective agreement under which no member of the Union was to handle any prefabricated doors. It was alleged that this clause violated Section 8(e) of the Act. The Court held that the purpose of the clause was not to bring pressure on employers making prefabricated doors with respect to *their* employees, but to preserve work for the employees of the contractor. The Court said (386 U.S. at 635, 87 S.Ct. at 1263):

"Although the language of § 8(e) is sweeping, it closely tracks that of § 8(b) (4) (A), and just as the latter and its successor § 8(b) (4) (B) did not reach employees' activity to pressure their employer to preserve for themselves work traditionally done by them, § 8(e) does not prohibit agreements made and maintained for that purpose."

In the *Houston* case the Court said (368 U.S. at 668, 87 S.Ct. at 1281):

"*National Woodwork Mfrs.*, supra, holds that collective activity by employees of the primary employer, the object of which is to affect the labor policies of that primary employer, and not engaged in for its effect elsewhere, is protected primary activity. 'Congress was not concerned to protect primary employers against pressures by disinterested unions, but rather *to protect disinterested employers against direct pressures by any union.'* *

* United Association of Journeymen, Local 106 (Columbia-Southern Chemical Corporation), 110 N.L.R.B. 206, 209–210."

■ In the present case it is possible that Addendum B had a broader purpose than merely the protection of Local 28 employees from the loss of work they had traditionally done, though the record does not support this conclusion, and though the careful specification of the types of prefabricated products that were not to be used would tend to support the view that the clause was a work-preservation clause. But, for the reasons set forth above, we are not here concerned

with the intended scope of Addendum B but with its application to the refusal to install Johnson's dampers.

There is not the slightest evidence, nor is there the least reason to believe, that the purpose of Local 28 in demanding that National and Kerby not use the dampers manufactured by Johnson was to bring pressure on Johnson with respect to the employees at Johnson's Milwaukee plant. Those employees are members of a sister local of the same international. The record presents no indication whatsoever of any desire of Local 28 to displace its sister local at Johnson's plant or, indeed, to extend its jurisdiction beyond the New York City area. There is nothing to suggest that Johnson was engaged in any dispute with his employees or that Local 28 had any interest at all in seeking improvement in the working conditions of those employees.

On the contrary, every indication points to the conclusion that Local 28 was seeking to preserve for its own members, who were employees of the employers belonging to the two Associations, the work of fabricating dampers which had traditionally been done in Association shops by members of Local 28. In the terms of the *National Woodwork* and *Houston* cases, the union's pressure was directed at their own employers for a purpose which those cases held to be "primary" and outside the scope of Section 8(e) and Section 8(b) (4) (ii) (A) and (B) of the Act. None of the respondents participated in any activity which had for its purpose the direction of any "secondary" pressure against Johnson or against any other employer who was not a "primary" employer.

We find, therefore, that the Board has wholly failed to establish the commission of any unfair labor practice under the Act.

The Board's petition for enforcement of its order is denied and the order is set aside.

WATERMAN, Circuit Judge (concurring).

I concur. As so ably explicated by Judge Hays, our unwillingness to enforce the Board's order is based upon the peculiar factual situation here. Irrespective of how Addendum B might be utilized under other circumstances, an issue that can await such a utilization, it seems obvious that here it was utilized solely for the benefit and advantage of the members of Local 28 to protect their own work-product. National Woodwork Manufacturers Association v. National Labor Relations Board, 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967) and Houston Insulation Contractors Association v. National Labor Relations Board, 386 U.S. 664, 87 S.Ct. 1278, 18 L.Ed.2d 389 (1967).

MOORE, Circuit Judge (concurring).

I cannot reconcile the thought expressed in the opinion that Addendum B might be determinative if the unfair labor practice charged were its original inclusion in the contract with the conclusion that it is not determinative because there can be read into it the exception of work preservation. To me the wording and intent of Section 8(e) are quite clear. Addendum B was designed to force Kerby and National to refrain from using Johnson's dampers. But statutes mean only that which courts read into them and apparently a work preservation exception has been judicially so written. An affirmative declaration of such a purpose could easily have been written into the Addendum but I cannot quarrel with the court's write-in of this assumed language *nunc pro tunc* in view of the *National Woodwork Manufacturers* and *Houston Insulation Contractors* cases (supra).