NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

CARPENTERS DISTRICT COUNCIL OF
KANSAS CITY AND VICINITY,
AFL–CIO, Respondent.

KAAZ WOODWORK COMPANY, INC.,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

and

Carpenters District Council of Kansas
City and Vicinity AFL–CIO,
Intervenor.

Nos. 18552, 18582.

United States Court of Appeals
Eighth Circuit.

Sept. 19, 1967.

Charles M. Steele, Atty., N.L.R.B., Washington, D. C., for the Labor Board; Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Gary Green, Atty., N.L.R.B., Washington, D. C., were with him on the brief for the Labor Board.

Charles K. Thompson, Kansas City, Mo., for Kaaz Woodwork Company, Inc.; Landon Rowland, and Watson, Ess, Marshall & Enggas, Kansas City, Mo., were with him on the brief for Kaaz Woodwork Company, Inc.

Charles A. Werner, St. Louis, Mo., for Carpenters' District Council of Kansas City and Vicinity, AFL-CIO; Gibson Langsdale, Kansas City, Mo., was with him on the brief.

Before MATTHES, BLACKMUN and MEHAFFY, Circuit Judges.

BLACKMUN, Circuit Judge.

We again are confronted with an issue of secondary picketing and an alleged violation of § 8(b)(4)(B) of the National Labor Relations Act, as amended by the Landrum-Griffin Act of 1959, 29 U.S.C. § 158(b)(4)(B).

The National Labor Relations Board seeks enforcement of its order, issued April 21, 1966, and reported at 158 N.L.

R.B. No. 29, directed to Carpenters District Council of Kansas City and Vicinity, AFL-CIO. The respondent union seeks review and requests that enforcement be denied and that the Board order be set aside or at least modified. The employer, Kaaz Woodwork Company, Inc., seeks review and a broadening of the remedy devised by the Board against the union. Jurisdiction is established.

Except for expanding the cease and desist provisions of the order to specify three construction companies, rather than only one, and except for a corresponding broadening of the notice, the Board panel unanimously adopted the findings, conclusions and recommendations of the trial examiner. It thereby determined that the union had violated § 8(b) (4) (B) of the Act [1] by picketing and threatening to picket construction sites in order to force construction companies with which it had no dispute to cease doing business with Kaaz which the union had struck. The Board also held that the evidence did not substantiate an allegation that a letter written by the Council in January 1965 to contractors and other millwork users violated the Act.

The basic facts are not in dispute:

Kaaz manufactures millwork, including trim, doors and cabinets, at its plant in Leavenworth, Kansas. It effects delivery of its products f. o. b. jobsite by its own trucks and drivers and, to an extent, by commercial carriers.

Since April 1948 the Carpenters Council has been the certified representative of Kaaz production and maintenance workers at the Leavenworth plant. There are about 40 of these workers. Kaaz, in addition, has three truck drivers who are not part of the bargaining unit and who have never been represented by the Council. Successive collective bargaining agreements were negotiated by the union and Kaaz. The last of these expired April 30, 1963. Negotiations for a new contract were not successful. On September 17, 1963, the union called a strike and began picketing the Leavenworth plant. The strike and the picketing there were still in progress at the time of the hearing before the examiner in July 1965.

J. E. Dunn Construction Co., the charging party, filed its unfair labor practice charges on March 17, 1965. The General Counsel issued the complaint against the union on May 5. The six month period specified by § 10(b) of the Act, 29 U.S.C. § 160(b), thus extends back to September 1964 and any unfair labor practice occurring prior thereto could not be a basis for the issuance of the complaint.

The picketing incident is one which took place March 16, 1965, at Dunn's construction project for an addition to St. Luke's Hospital in Kansas City, Missouri. The addition lies between J. C. Nichols Highway and Wornall Road. These streets are roughly parallel to each other and are connected north of the hospital by 43rd Street. The 8-story addition, essentially complete in March 1965, is set back about 110 feet from

---

1. § 158. Unfair labor practices

&ast; &ast; &ast; &ast; &ast;

(b) It shall be an unfair labor practice for a labor organization or its agent —* * *

(4)(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce or restrain any person

engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—* * *

(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person * * * *Provided*, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing;

&ast; &ast; &ast; &ast; &ast;

Nichols. On the date in question a load of Kaaz cabinets arrived at the project on a trailer of Graham Ship-By-Truck Co. There were no Kaaz employees on the jobsite. The driver parked on Nichols opposite the addition and checked in with the superintendent for unloading instructions. He then returned and moved the truck north on the Highway and on to 43rd Street.

The union's business agent, Willard Edwards, and Frank Miller, a union employee, were parked on Nichols at the time the truck arrived. When the truck moved north Edwards sent Miller to the Wornall side to picket the truck if it entered the hospital property there. The truck did not go to the Wornall side, however, but turned around and came back on the Nichols side. Edwards walked up, inspected the delivery ticket, and learned that the cargo was from Kaaz. Dunn's superintendent directed that the cabinets be unloaded. Edwards then began walking back and forth on the sidewalk of Nichols the entire length of the new addition. He carried a picket sign which stated that it was a notice to only the public that Kaaz was on strike and that the Council did not seek to induce a strike by any other employees. Edwards' picketing was 90 feet from the trailer at the closest point and 175 feet at the most distant. Meanwhile, Miller carried a similar but not identical sign up and down the sidewalk on Wornall Road on the other side of the 8-story addition where the truck was not parked. There were neutral jobsite employees working on the Wornall side of the building. No one working near the truck could see Miller's sign.

Shortly after the two men started picketing, Dunn employees, including laborers who were unloading the truck, stopped work. A superintendent then conferred with Edwards who agreed to stop the picketing if the truck left. It did and the picketing ceased. The employees returned to work. The stoppage lasted about 45 minutes. From then until late May Miller watched the hospital site daily and investigated the con-

tents of trucks which entered the premises.

The threats concern other construction sites:

Wade Johnson was the superintendent for Callageri-Kahn Construction Co. which had a project at Oak Park High School in Kansas City, Missouri. Johnson, who was also a union member, was called before the Council's executive board in December 1964 to discuss a possible violation of the union's bylaws when Johnson had ordered workers to unload Kaaz goods. He was questioned about what he intended to do in regard to installation of Kaaz products. He was warned by the board that "they would plan on possibly picketing the job to prevent unloading". On March 15, 1965, a load of Kaaz millwork was delivered to the same high school project. Edwards picketed and the work stopped. The superintendent told the Kaaz driver to pull the load away because he did not want the job shut down. A further attempt to deliver on April 2, 1965, resulted in a similar stoppage. The superintendent complained to Edwards, "You are hurting me". Edwards then told the superintendent, "We are accomplishing what we are after". The Kaaz loads were eventually delivered at night when no picketing took place.

In the middle of June 1965 the union's business agent Epp asked an Eldridge Construction Company superintendent to disclose who was furnishing millwork for that company's project at the Bishop O'Hara High School in Kansas City, Missouri. When informed that Kaaz was the supplier, Epp told the superintendent that "if they saw Kaaz's truck out there, they would have a banner on it".

The change which the Board made in the trial examiner's recommended order and notice was the addition of the Callageri-Kahn and Eldridge names to that of Dunn.

The Board concluded that the Council's picketing at the hospital project constituted an inducement of neutral employees to cease work, and a restraint and

coercion of Dunn with the object of forcing Dunn to cease doing business with Kaaz. It found that the union's threats to picket at the Callageri-Kahn and the Eldridge sites were for the same purpose. The Board's order requires the Council to cease and desist from engaging in such conduct with respect to the three named construction companies or any other person where the object is the same, and to post appropriate notices.

The Board urges here that it properly found that the Council violated § 8(b)(4)(B) and that the union's conduct amply warranted the Board's inferences that the picketing and threats were in furtherance of an illegal object. The union urges that it was engaged in lawful and peaceful primary picketing at a common situs, that the weight of the probative evidence supports this position, and that the record does not support the Board's broad order against the union. Kaaz argues that the Board's order is insufficient to remedy the Council's unfair labor practices and that it should be amended to require the Council to notify customers of Kaaz that they are free to deal with Kaaz without fear of picketing or other reprisals from the Council.

1. This court had occasion recently again to review the principles which have been developed in connection with § 8(b)(4) and primary and secondary picketing. National Maritime Union of America v. NLRB, 367 F.2d 171, 175–176 (8 Cir. 1966), cert. denied 386 U.S. 959, 87 S.Ct. 1030, 18 L.Ed.2d 108. We noted there, among other things, that Congress consistently has refused to prohibit peaceful picketing except where it is used as a means to achieve specific ends which experience has shown are undesireable; that Congress by the statute did not seek to interfere with the ordinary strike; that in enacting the statute Congress had the dual objectives of preserving the right of unions to bring pressure to bear on offending employers in primary labor disputes and of shielding unoffending employers and others from pressures in controversies not their own; that not every type of secondary boycott is outlawed by the statute; that the presence of economic pressure on a neutral employer is not necessarily evidence of illegality but may be the natural result of lawful primary activity; that the drawing of the line between what is legitimate primary activity and what is proscribed secondary activity may be difficult; that nevertheless this task must be performed; that the nature of acts performed shows intent; that emphasis is on what is the routine activity of the primary employer and his every day or normal operations; that peaceful picketing at a secondary site is not proscribed where it is directed only to a struck product, as contrasted with all trading with the secondary employer; that a strike situs may be ambulatory; and that, in certain circumstances, the presence or absence of employees of the primary employer on the premises is not a critical factor in the legality of the picket line. Among the cases which were cited in support of these principles were NLRB v. Fruit & Vegetable Packers & Warehousemen, 377 U.S. 58, 84 S.Ct. 1063, 12 L.Ed.2d 129 (1964); NLRB v. Drivers, etc., Union No. 639, 362 U.S. 274, 80 S.Ct. 706, 4 L.Ed.2d 710 (1960); NLRB v. Int'l Rice Milling Co., 341 U.S. 665, 71 S.Ct. 961, 95 L.Ed. 1284 (1951); NLRB v. Denver Bldg. and Constr. Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284 (1951); Local 1976, United Bhd. of Carpenters, etc., 357 U.S. 93, 78 S.Ct. 1011, 2 L.Ed.2d 1186 (1958); Local 761, Int'l Union of Electrical, etc. Workers, AFL-CIO v. NLRB, 366 U.S. 667, 81 S.Ct. 1285, 6 L.Ed.2d 592 (1961); United Steelworkers of America, AFL-CIO v. NLRB, 376 U.S. 492, 84 S.Ct. 899, 11 L.Ed.2d 863 (1964); Sailors' Union of the Pacific (Moore Dry Dock Co.), 92 NLRB 547 (1950); and Seafarers Int'l Union, etc. v. NLRB, 105 U.S.App. D.C. 211, 265 F.2d 585 (1959). See, also, National Woodwork Mfrs. Ass'n v. NLRB, 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967), and Houston Insulation Contractors Ass'n v. NLRB, 386

U.S. 664, 87 S.Ct. 1278, 18 L.Ed.2d 389 (1967).

A construction project is an example of a situation where, frequently, it is not easy to resolve the opposing claims of the union and the neutral employer and yet to achieve the dual objectives of preserving the aforesaid union right and of shielding the unoffending employer. The Board was confronted with this problem in the well-known *Moore Dry Dock* case, supra. It there evolved standards for determining the primary or secondary character of challenged picketing. It held, p. 549 of 92 NLRB, that in a common situs situation, picketing is primary if (a) it is limited to times when the situs of the dispute is located on the secondary employer's premises; (b) at the time of the picketing the primary employer is engaged in its normal business at that situs; (c) the picketing is limited to places "reasonably close" to the situs; and (d) the picketing discloses clearly that the dispute is with the primary employer.

This court has observed that the *Moore Dry Dock* standards are not the "single guide" for decision and that they are only evidentary in nature. NLRB v. International Hod Carriers, etc. Union, 285 F.2d 397, 401 (8 Cir. 1960), cert. denied 366 U.S. 903, 81 S.Ct. 1047, 6 L.Ed.2d 203. See Local 761, Int'l Union of Electrical, etc. Workers, AFL-CIO v. NLRB, supra, 366 U.S. 667, 81 S.Ct. 1285; NLRB v. Highway Truckdrivers & Helpers, Local 107, 300 F.2d 317, 321 (3 Cir. 1962). Other evidence as to a union's intent may be available. Here, however, the union does not challenge the *Moore Dry Dock* standards, per se, and indeed agrees that they "are the evidentiary tests to be applied to the facts in this case". Its argument is that the standards were totally satisfied. We therefore are content to approach

the sufficiency of the evidence aspect of the present appeal through the *Moore Dry Dock* standards, just as we were in Smith v. American Guild of Variety Artists, 349 F.2d 975, 979 (8 Cir. 1965), vacated and remanded on other grounds 384 U.S. 30, 86 S.Ct. 1283, 16 L.Ed.2d 332, reaffirmed 368 F.2d 511 (8 Cir. 1966), cert. denied 387 U.S. 931, 87 S.Ct. 2052, 18 L.Ed.2d 991.

No point is made as to the satisfaction here of the first, second and fourth of the four *Moore* standards. The picketing was strictly limited in time and took place only when the truck loaded with Kaaz products was at the construction site. If we set to one side the fact that the truck was Graham's and not Kaaz' and regard Graham as acting for Kaaz,[2] Kaaz was then engaged in its normal business at the situs at the time of the picketing. The signs carried by Edwards and Miller were directed only to the public and professed that the dispute was with Kaaz. We therefore focus our attention upon the satisfaction of the third condition, namely, whether the picketing was limited to places reasonably close to the situs.

 We are not prepared to say, on this record, that the Board's conclusion that this third condition was not fulfilled at the St. Luke's Hospital project on March 16, 1965, was an improper factual determination. Clearly, the picketing by the Council's employee Miller was far removed from the delivery truck. He was on the Wornall side of the hospital property, with a practically completed 8-story structure between him and the truck. The vehicle was out of his sight and he was out of sight of anyone at or near the truck. That he may have been dispatched to that side of the building because Edwards thought the truck was on its way there may explain his presence on Wornall but it does not

---

**2.** Neither the trial examiner nor the Board made a finding as to whether Graham's delivery of the Kaaz products to the hospital construction site on March 16, 1965, was made by Graham as an "ally" of Kaaz. See NLRB v. Business Machine & Office Appliance, etc. Board, 228 F.2d 553 (2 Cir. 1955), cert. denied 351 U.S. 962, 76 S.Ct. 1025, 100 L.Ed. 1483. It was specifically found unnecessary to consider the union's "ally" contention.

excuse his picketing Kaaz at that point. An explanation does not necessarily equate with legal excuse.

Miller's offending and unauthorized picketing is, in itself, sufficient support for the Board's order. There is, however, more. Edwards' own picketing could scarcely be said to be "reasonably close" to the truck. His march of over 270 feet along Nichols was obviously a picketing of the entire construction site. His closest approach to the truck was 90 feet, his most distant, 175 feet. In this case it is no answer, we feel, to argue that he confined himself to the nearest points on public, as distinguished from hospital property. He was not denied access to the site for he freely approached the truck and was even allowed to examine its papers in order to determine the source of its contents. Neither, apparently, did he stay by the access drive. Edwards thus made no effort reasonably to confine himself to the truck and its vicinity.

■ The record discloses that there was no picketing when Kaaz trucks were unloaded at night and neutral construction workers were not present. And there is evidence of remarks by Edwards that there was no sense in picketing if there was no one to walk off the job; that if trouble was caused contractors would refuse to do business with Kaaz; and that if the union could hurt Dunn it would hurt Kaaz at the same time. These comments, of course, are admissible evidence as to the union's picketing motives. NLRB v. International Hod Carriers, etc., Union, supra, p. 403 of 285 F.2d; NLRB v. Associated Musicians, etc., Local, 226 F.2d 900, 904 (2 Cir. 1955), cert. denied 351 U.S. 962, 76 S.Ct. 1025, 100 L.Ed. 1483.

■ Applying the criteria for review set forth in Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). we readily conclude that all this most adequately supports the Board's determination that the union's picketing was for a proscribed objective, namely, to induce a work stoppage by employees of Dunn in order to force Dunn to cease doing business with Kaaz, and that it is not to be ignored or dismissed as an isolated incident which happened contrary to the union's directions. NLRB v. International Hod Carriers, etc., Union, supra; NLRB v. Local 254, Building Service Employees Int'l Union, 359 F.2d 289 (1 Cir. 1966); Brown Transp. Corp. v. NLRB, 334 F.2d 30, 38–40 (5 Cir. 1963); NLRB v. Highway Truckdrivers & Helpers, Local 107, supra, pp. 321–322 of 300 F.2d

■ 2. The Council urges that the threats did not pertain to the job itself or to Kaaz products on the job after delivery and that a notification (threat) to engage in protected conduct is protected activity. NLRB v. Servette, Inc., 377 U.S. 46, 84 S.Ct. 1098, 12 L.Ed.2d 121 (1964), is cited. The legal proposition so stated is a recognized one but it has no controlling application here. The threats, as we have noted, bore on the issue of the union's intent, were part of the background of the case, and, in that light, were not restricted to protected activity. They were appropriately considered by the Board and made a part of the cease and desist order.

■ 3. The Council argues that the Board improperly found that the union's conduct and activities before September 1964 could support an inference as to motive. The union, during this earlier period, picketed a number of jobsites where Kaaz products were being delivered. It is pointed out, however, that four of the incidents, upon which the unfavorable inference was based, were the subject of unfair labor practice charges; that those charges were investigated; and that the charges were then either withdrawn or found to be unlawful without further appeal by Kaaz. The union notes that the examiner, although using these four incidents as part of his background material, did not even mention that the charges with respect thereto were dismissed or withdrawn.

We are not at all persuaded that this works to nullify the validity of the Board's order. It would have been appropriate, of course, for the trial examiner and the Board to have noted the withdrawel or dismissal of these four charges, but had they done so the Council surely would still be complaining here of the use of these pre-September 1964 incidents. We think it cannot be said that this material does not possess background relevancy with respect to activity within the six month period. See Local Lodge No. 1424, Int'l Ass'n of Machinists AFL-CIO v. NLRB, 362 U.S. 411, 416, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960); Paramount Cap Mfg. Co. v. NLRB, 260 F.2d 109, 112–113 (8 Cir. 1958). It shows constancy of conflict, a factor not without significance, and the nature and depth of feelings and, after all, is only part of all the material which the Board utilized.

■ 4. The union also complains about the inclusion in the cease and desist order of the words "or any other person engaged in commerce or in an industry affecting commerce".[3] It asks that we order these words deleted.

This court on occasion has directed the elimination of language of this kind from Board orders. See, for example, NLRB v. International Hod Carriers, etc., Union, 285 F.2d 394 (8 Cir. 1960), and NLRB v. International Hod Carriers, etc., Union, supra, 285 F.2d 397, 404. On the other hand, we have approved the inclusion of this very language. See NLRB v. International Union of Operating Engineers, 317 F.2d 638, 644 (8 Cir. 1963). In the latter case we observed, with citations, that the Board has "ample discretion" in formulating its orders,

and that, once violations have been found, "the Board is justified in broadening its order to include similar unlawful practices if there is evidence in the record of some general scheme or design or proclivity for such unlawful practices". See Marshfield Steel Co. v. NLRB, 324 F.2d 333, 339 (8 Cir. 1963). After a review of all the evidence, much of which we have not delineated here, we think that, as in the *Engineers* case, the order is justified. It is not, after all, unlimitedly broad, for it applies only to activity directed to the cessation of doing business with Kaaz.

■ 5. Kaaz by its petition would have the Board order broadened to require the union to send a letter to all those persons, to whom it had written in January 1965, informing them that they are free to deal with Kaaz without fear of picketing or other reprisals from the union. The letter of January 1965 was one in which the union described its position in its strike against Kaaz, stated that it would take all legal means to bring to public attention that certain contractors were using products made by strikebreaking employees of Kaaz, and asked the recipient not to consider Kaaz as a supplier for any construction or remodeling jobs.

Although Kaaz argues strenuously to the contrary, we are not convinced that the remedy fashioned by the Board is, under the circumstances, ineffective or insufficient or arbitrary. This being so, we do not disturb it. Amalgamated Clothing Workers of America v. NLRB, 345 F.2d 264, 268 (2 Cir. 1965); Amalgamated Clothing Workers of America v. NLRB, 125 U.S.App.D.C. 275, 371 F.2d 740, 746 (1966).

---

3. The full paragraph is:
"1. Cease and desist from:
"(a) Engaging in, or inducing or encouraging any individual employed by J. E. Dunn Construction Co., or any other person engaged in commerce or an industry affecting commerce, to engage in a strike or refusal in the course of his employment to perform services, [or] threatening, coercing, or restraining J.

E. Dunn Construction Co., Callageri-Kahn Construction Co., and Eldridge Construction Company, or any other person engaged in commerce or in an industry affecting commerce, where, in either case, an object thereof is to force or require J. E. Dunn Construction Co., or any other person, to cease doing business with Kaaz Millwork Company, Inc."

The Board's petition for enforcement is granted. The Council's petition against enforcement or, in the alternative, for modification, is denied. Kaaz' petition for modification is also denied.