CANADA DRY CORPORATION, Detroit Coca-Cola Bottling Company, Faygo Beverages, Inc., Pepsi-Cola Metropolitan Bottling Company, Inc., Seven-Up Bottling Company of Detroit, The Squirt-Detroit Bottling Co., Vernors, Inc.; and Wyandotte Coca-Cola Bottling Co., Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

and

Retail Store Employees Union, Local No. 876, Retail Clerks International Association, AFL–CIO, Intervenor.

The INDEPENDENT BISCUIT COMPANY, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

and

Retail Store Employees Union, Local No. 876, Retail Clerks International Association, AFL–CIO, Intervenor.

Nos. 19497, 19559.

United States Court of Appeals, Sixth Circuit.

Feb. 25, 1970.

Earl R. Boonstra, Detroit, Mich., for petitioners Canada Dry Corp. and others. Timothy K. Carroll, Dykema, Wheat, Spencer, Goodnow & Trigg, Detroit, Mich., on the brief.

Robert E. Williams, National Labor Relations Board, Washington, D. C., for respondent; Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Eugene B. Granof, Atty., National Labor Relations Board, Washington, D. C., on brief.

Theodore Sachs, Detroit, Mich., for intervenor Local No. 876; Rothe, Marston, Mazey, Sachs & O'Connell, Detroit, Mich., on the brief.

Before PHILLIPS, Chief Judge, and WEICK and COMBS, Circuit Judges.

COMBS, Circuit Judge.

This case is before us on petitions to review and set aside an order of the National Labor Relations Board. 174 N.L.R.B. No. 67. The Board held that Local 876 of the International Association of Retail Clerks and certain retail food chains had not violated Section 8(e) of the National Labor Relations Act, 29 U.S.C. § 158, by including in their collective bargaining agreement a provision prohibiting other persons from engaging in work activity "customarily performed" by store clerks.

Petitioners in No. 19,497 are manufacturers, bottlers, and distributors in the Detroit metropolitan area and serve the ten retail chains named in the complaint. Independent Biscuit Company, petitioner in No. 19,559, sells and distributes cookies and crackers to these supermarkets; it is a party to this appeal but no brief has been filed on its behalf.

For several years, the food chains have jointly bargained with the union through the United Supermarket Association of Michigan. In the negotiations preceding execution of the 1967 bargaining agreement, the union asserted that the employees of certain vendors had been shelving goods in the supermarkets, and that this work belonged to the store clerks. These vendors included distributors of certain brand name varieties of cookies and crackers, spices, baby food, and soft drinks. For example, although store clerks handle and shelve most of the items offered for sale by the supermarkets, for some time prior to 1967 drivers and salesmen employed by the bottlers (petitioners in No. 19,497) shelved bottled soft drinks at the time of delivery or shortly thereafter. The tasks of rotating, cleaning, pricing, affixing advertising material to the product, and occasionally setting up promotional displays were also performed by the bottlers' employees. However, when necessary between visits by salesmen, the store clerks would replenish shelves and perform the related functions. In addition, all canned soft drinks were shelved exclusively by the clerks as were bottled

soft drinks distributed by bottlers other than petitioners. Related beverages, including fruit juices, coffee, tea, beer and wine, and milk, were also shelved exclusively by the clerks. The procedure under which the specified brand names of cookies and crackers, spices, and baby foods were handled and shelved was similar to that employed by the bottlers.

In response to this practice, the union successfully negotiated the inclusion of Article 8(c) in the 1967 collective bargaining agreement. That clause provides:

"To preserve bargaining unit work, the Employer agrees that no supervisor, store manager, assistant store manager or any other person not covered by this Agreement, shall perform any work customarily performed by employees covered by this Agreement, except only in the event of an emergency not attributable to the Employer, and except only with respect to bread and potato chip vendors, with respect to their initial daily delivery only, and except only with respect to rack jobbers (defined to be those vendors, who at the execution of this Agreement, serviced non-food specialty items), who shall be permitted to stock their customary respective merchandise. The Employer agrees that supervisors, store managers, assistant store managers or any non-member of the bargaining unit employed by the Employer violating this understanding will be severely disciplined and after three (3) written violations will be demoted and made a member of the bargaining unit with no seniority."

Pursuant to Article 8(c), the supermarkets prevented the salesmen of certain brand name varieties of cookies and crackers, spices, baby foods, and soft drinks from shelving their products and performing the related tasks they previously had performed. These suppliers continue to sell their merchandise to the supermarkets, but their products are delivered to designated areas and are subsequently handled and shelved exclusively by the store clerks.

The Trial Examiner found that, in enforcing Article 8(c) in this manner, the food chains and the union had entered into an agreement to cease doing business with various outside vendors in violation of Section 8(e) of the Act.[1] The Board disagreed and dismissed the complaint. The single question is whether Article 8(c) of the bargaining agreement, as construed by the parties, establishes a secondary boycott in violation of Section 8(e) of the Act. We hold that it does not.

Both parties rely on National Woodwork Manufacturers v. NLRB, 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967). In that case the collective bargaining agreement provided that the union members would not handle prefabricated doors. In determining that this clause did not violate Section 8(e), the Court stated that the test is whether the union's objective was preservation of work for the employees of the unit or whether the agreement "[was] tactically calculated to satisfy union objectives elsewhere. * * * The touchstone is whether the agreement or its maintenance is addressed to the labor relations of the contracting employer *vis-a-vis* his own employees." The Court reiterated its position in Houston Insulation Contractors Association v. NLRB, 386 U.S. 664, 87 S.Ct. 1278, 18 L.Ed.2d 389 (1967), stating that *National Woodwork* "holds that collective activity by employees of the primary employer, the object of which is to affect the labor policies of that primary employer, and not engaged in for its effect elsewhere, is protected primary activity." See A. Duie Pyle, Inc. v. NLRB, 383 F.2d 772, 776 (3rd Cir. 1967); NLRB v. Joint Council of Teamsters No. 38, 338 F.2d 23, 28 (9th Cir. 1964).

The bottlers argue that Article 8(c), as applied by the parties, provides for work acquisition—not work preservation, and is therefore per se secondary in nature and violative of Section 8(e). Our attention is called to the fact that in *National Woodwork* the union's objective was preservation of work traditionally performed by the jobsite carpenters, and that the union there was not attempting to monopolize jobs or acquire new job tasks when the jobs of its members were not threatened by the boycotted product.

Applying the standard set forth in *National Woodwork*, the Board found that in-store shelving and servicing tasks were performed by the store clerks on the vast majority of grocery merchandise, including goods similar to the brand names in issue and goods differing from these products only in brand name; also that a limited amount of work was performed in regard to the brand names in issue. Based on these work practices, the Board further found that work on the specified brand name products was not "so foreign to the unit as to negate the Clerks' assertion of a job protection object," and that Article 8(c), as applied, sought only to preserve work opportunities for the clerks and was not calculated to satisfy union objectives elsewhere.

These findings are supported by substantial evidence. Although the tasks of initially handling and shelving the particular brand name products in issue had not been traditionally performed by the store clerks, we do not regard the clerks' claim to these jobs as representing in any realistic sense an attempt to monopolize jobs or acquire new job tasks. Rather, these were the type of jobs which the clerks had traditionally done and for which they had the skills and

1. Section 8(e), 29 U.S.C. § 158(e), provides: "It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement * * * whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting, or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible and void * * *."

experience. We agree with the Board's finding, based on Brentwood Markets, 171 NLRB No. 142 and Cala Foods, 172 NLRB No. 200, that it is unrealistic to define the area of the clerks' legitimate job protection efforts according to brand name or supplier.

Moreover, the record is devoid of any evidence of a secondary objective. There is no evidence that the union had any dispute with any of the bottlers or other suppliers; or that it was attempting to require the employees of the outside vendors to join the clerks' union; or that the union would allow the suppliers to shelve their own products provided they were represented by a union approved by the clerks. Article 8(c), as applied, is no more than an attempt to preserve those work opportunities which the union had a right to protect for its members.

The petitions to set aside the Board's order are denied.