David C. SACHS, Acting Regional Director of Region 5 of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Appellant,

v.

LOCAL UNION NO. 48, UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the PLUMBING AND PIPEFITTING INDUSTRY OF the UNITED STATES AND CANADA, AFL–CIO, and Local Union No. 438, United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL–CIO, Appellees.

No. 71–1869.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 4, 1972.

Decided Jan. 26, 1972.

Marvin Roth, Washington, D. C., Supervisory Atty. (Peter G. Nash, Gen. Counsel, Julius G. Serot, Asst. Gen. Counsel, and Franklin H. Goldberger, Atty., N. L. R. B, on brief), for appellant.

John J. Hirsch, Baltimore, Md., (Paul E. Gaeng, Baltimore, Md., on brief), for Local Union No. 48.

Cosimo C. Abato, Baltimore, Md. (Anthony A. Abato, Jr., and Bracken & Abato, P. A., Baltimore, Md., on brief), for Local Union No. 438.

Before CRAVEN, BUTZNER and RUSSELL, Circuit Judges.

BUTZNER, Circuit Judge:

The National Labor Relations Board appeals from an order of the district court denying an injunction, which the Board sought pursuant to § 10(*l*) of the National Labor Relations Act, 29 U.S.C. § 160(*l*) (1970),[1] pending resolution of

---

1. "(*l*)  Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) (A), (B), or (C) of section 158(b) of this title, or section 158(e) of this title or section 158(b) (7) of this title, the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court within any district where the unfair labor practice in question has occurred, is alleged

charges filed with the Board by George Koch Sons, Inc. We vacate the judgment dismissing the action and remand for further proceedings.

The Board alleged that the General Electric Company had awarded a contract to Koch for the manufacture and installation of industrial finishing systems at a G. E. plant near Baltimore, Maryland. Koch subcontracted with Phillips Plumbing & Heating Company for the installation of piping at the job site, including pretested, prefabricated pipe. The Board charged that the two unions named as defendants in this action[2] engaged in secondary boycotts in violation of § 8(b) (4) (i) (ii) (B) of the Act[3] by ordering their members to refuse to install the prefabricated materials. The unions denied that their conduct constituted a boycott of Koch's products, and insisted they were engaged in primary activity against Phillips for the preservation of work traditionally performed by plumbing employees in Maryland. The unions based their defense on the following work preservation clause in their collective bargaining agreement with Phillips:

"All pipe of any size used on the job shall be cut and threaded by journeymen and apprentices either by machine or by hand and all fittings to be made up (of any size), caulked, or otherwise, fitted to any pipe, must be done on the job or in the contractor's shop by journeymen or apprentices."

The district judge, noting that Phillips had entered into a contract with Koch to install prefabricated pipes while subject to a work preservation agreement, considered that the case turned on the Board's right to control test—did Phillips have sufficient control over the disputed work to grant the unions what they wanted? Relying on a number of recent cases,[4] the district court held that the right to control test was no longer a

---

to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. . . ."

2. Locals 48 and 438, United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL–CIO.

3. Section 8(b) (4) (i) (ii) (B), 29 U.S.C. § 158(b) (4) (i) (ii) (B), provides in part that "[i]t shall be an unfair labor practice for a labor organization or its agents—

. . . . .

"(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

. . . . .

"(B) forcing or requiring any person to cease using, selling, handling, trans-

porting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: Provided, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing. . . ."

4. E. g., Local No. 742, United Brotherhood of Carpenters, etc. v. NLRB, 444 F.2d 895 (D.C.Cir. 1971), cert. denied, J. L. Simmons Co. v. Local 742, etc., 404 U.S. 986, 92 S.Ct. 447, 30 L.Ed.2d 371 (1971); Local Union No. 636, United Ass'n of Journeymen and Apprentices of Plumbing, etc. v. NLRB, 139 U.S.App. D.C. 165, 430 F.2d 906 (1970); American Boiler Mfrs. Ass'n v. NLRB, 404 F.2d 556 (8th Cir. 1968); cf. Beacon Castle Square Bldg. Corp. v. NLRB, 406 F.2d 188, 192 n. 10 (1st Cir. 1969); NLRB v. Local Union No. 164, Intern. Brotherhood of Electrical Workers, 388 F.2d 105 (3d Cir. 1968). Accord, Western Monolithics Concrete Prod., Inc. v. NLRB, 446 F.2d 522 (9th Cir. 1971).

viable means of discerning whether union activity is primary or secondary. Accordingly, it denied the Board's application for an injunction. We vacate and remand because we believe the case has broader ramifications than the validity of the Board's rather simplistic right to control test.

■ As a preface, we note that under § 10(l) of the Act, it is not the function of the district court to decide the merits of the unfair labor practice case, for this issue is reserved exclusively for the Board subject to review by the court of appeals. The inquiry of the district court was limited to whether the Board had reasonable cause to believe that the unions were violating the Act. Malone v. United Steel Workers of America, 432 F.2d 554 (4th Cir. 1970). We, too, must refrain from deciding the case on the merits. We hold no more than that the Board's complaint, the union's answer, and the stipulated facts establish that the Board had reasonable cause to believe the unions were violating the Act, and for that reason an injunction should issue pending final determination of the case.

The leading cases distinguishing illegal secondary product boycotts from lawful primary action to preserve work are National Woodwork Manufacturers Association v. NLRB, 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967), and Houston Insulation Contractors Association v. NLRB, 386 U.S. 664, 87 S.Ct. 1278, 18 L.Ed.2d 389 (1967), in which the Court found no violation of the Act. Both cases involved refusals of the unions to allow its members to install prefit or precut material on construction jobs in violation of work preservation clauses in collective bargaining agreements. In *National Woodwork* the Court held that to differentiate between primary and secondary activity, inquiry must be made "into whether, under all the surrounding circumstances, the Un-

ion's objective was preservation of work for [the contractor's] employees, or whether the agreements and boycott were tactically calculated to satisfy union objectives elsewhere." 386 U.S. at 644, 87 S.Ct. at 1268. "The touchstone," said the Court, "is whether . . . maintenance [of the agreement] is addressed to the labor relations of the contracting employer *vis-à-vis* his own employees." 386 U.S. at 645, 87 S.Ct. at 1268.

The Board insists, however, that neither *National Woodwork* nor *Houston Insulation* are controlling because they dealt with situations where the contracts and specifications did not call for prefabricated materials. The Board points out that *National Woodwork* originally involved four disputes and that in three of them the specifications required precut and prefinished doors. The Board and the court of appeals held that the union's refusal to install the specified doors was a violation of § 8(b) (4) (B) because the contractors had no control over this aspect of the work.[5] The union, however, did not seek review of these decisions, and only the fourth dispute, in which the specifications did not provide for precut, prefinished doors, was heard by the Supreme Court. Consequently, the Court noted that the Board's right to control test was not an issue before it. 386 U.S. at 616 n. 3, 87 S.Ct. 1250.

In contrast to *National Woodwork*, the validity of the right to control test is an issue here. The Board suggests that this question has not yet been resolved by the Supreme Court, and that it is of sufficient moment, in itself, to support the plea for an injunction. While there is some merit to the Board's position, we believe that other factors justify relief under § 10(l).

The Board alleged, and the unions denied, that there was no labor dispute between Phillips and the unions. The

5. National Woodwork Mfrs.' Ass'n v. NLRB, 354 F.2d 594, 597 (7th Cir. 1965), aff'g in pertinent part, 149 N.L. R.B. 646, 658 (1964).

Board also alleged, though this too was denied, that one of the unions "threatened Koch that it would not allow its members employed by Phillips to install . . . prefabricated piping and otherwise threatened, coerced and restrained Koch unless Phillips refrained from installation [of this product]." Resolution of these issues is critical in determining whether the maintenance of the work preservation clause "is addressed to the labor relations of the contracting employer *vis-à-vis* his own employees." 386 U.S. at 645, 87 S.Ct. at 1268. In *National Woodwork* and *Houston Insulation*, the findings of the Board provided a factual basis for answering this inquiry. Here the facts necessary to settle this issue have not been fully developed.

In *National Woodwork* and *Houston Insulation*, the contractors voluntarily used prefabricated materials on the job. Any increase in cost because they could not be used presumably fell on the contractors whose employees were protesting prefabrication, and, therefore, the economic struggle was between the contractors and their own employees. Since Phillips did not initiate the order for prefabrication, it is not clear whether the additional cost, if any, would be borne by Phillips. It may be that Phillips as well as its employees will benefit from excluding prefabricated piping from the Baltimore area. The ultimate cost may fall on Koch. One of the unions intimates as much when it speculates in its brief that Koch's complaint is motivated by a desire to avoid the probable increased costs of fabrication on the job. It is likely Koch would gain nothing by cancelling its contract with Phillips because other shops in the Baltimore area are parties to collective bargaining agreements that contain similar work preservation clauses. Under the circumstances, perhaps the most realistic course open to Koch and G.E., if the unions' demands are to be met, is to discontinue shipping prefabricated products to the job site. The object of the unions' tactics, therefore, may not be to pressure Phillips who possibly stands indifferent and patiently awaits at least a modest windfall if the unions prevail. The ultimate targets of union action may be, as the Board alleges, Koch and G.E.

The mark of a labor dispute is the presence of economic adversaries. It is highly improbable that a bona fide labor dispute exists if both employer and employees stand to benefit from increased work on the job site. The Board, therefore, has reasonable cause to believe that no labor dispute exists between Phillips and the unions and that the unions are engaged in a product boycott forbidden by the Act. The facts necessary to decide whether the unions' conduct is primary or secondary are yet to be established, but Congress has placed the responsibility of ascertaining them and initially assessing their import on the Board, not the courts. *See* Schauffler for and on Behalf of N.L.R.B. v. Local 1291, International Longshoremen's Ass'n, 292 F.2d 182, 187 (3d Cir. 1961). At this stage of the proceedings it is sufficient for the Board to show, as it has done, reasonable cause for believing that § 8(b) (4) (B) has been violated.

We find no reason for denying relief to the Board in the other arguments advanced by the unions. The judgment is vacated, and the case is remanded for the entry of an appropriate injunction under § 10(*l*).