**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL 254, BUILDING SERVICE EMPLOYEES INTERNATIONAL UNION, AFL–CIO, Respondent.**

**No. 6626.**

United States Court of Appeals
First Circuit.

April 15, 1966.

Herman M. Levy, Washington, D. C., Atty., with whom Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Warren M. Davison, Atty., N.L.R.B., Washington, D. C., were on brief, for petitioner.

Harold B. Roitman, Boston, Mass., for respondent.

Before ALDRICH, Chief Judge, and McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

This is a petition to enforce an order of the National Labor Relations Board based on a finding that the respondent union [1] violated Section 8(b) (4) (ii) (B) of the Act [2] by threatening to picket and by picketing United Airlines (United) and the Great Atlantic & Pacific Tea Campany (A & P), with an object of forcing or requiring them to cease doing business with University Cleaning Company (University).

The Board's findings are made on the following evidence. University is in the business of furnishing cleaning and janitorial services to various customers in the Boston area. Its place of business is in Cambridge, but no work is performed there. In some instances employees report to Cambridge, but usually only to pick up the company truck and necessary tools and equipment. Since most of its work is performed after the regular business hours of its customers, a majority of the employees report directly to the customer's place of business.

Over the years from 1957 to 1962 the Union and University had collective bargaining agreements of one type or another but they parted company late in 1962 after negotiations for a new agreement had failed. Subsequent attempts by the Union to get together with the company on another agreement also failed. United and A & P were two of University's customers. University performed cleaning services for United at its three Boston offices. During March and April 1963 officials of the Union made a total of six visits to United's offices to protest its employment of University. During the course of these visits one or the other of the two Union officials involved made certain statements to management personnel with regard to picketing United.[3]

On April 23 one of the Union officials informed United by telephone that there would be picket lines at its offices the next day. On April 24 pickets appeared

---

[1.] Local 254, Building Service Employees International Union, AFL-CIO.

[2.] Section 8(b) (4) (ii) (B) makes it an unfair labor practice for the union—
  (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—
  *    *    *    *    *
  (B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 9: Provided, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing.

[3.] The Chief of Ticket Sales for United's three Boston offices testified that on April 17th during a conversation at the Statler-Hilton office, Kofman, a union organizer, indicated to him " * * * that he didn't think I would like to see pickets outside our ticket office." The assistant sales manager for United in Boston testified that on the same day at the Stuart Street office, Kofman "told me that the local now had the authority to strike * * * picket our premises" and when asked when such picketing might start, Kofman replied that he didn't know but "It could be the following day, or a week hence. * * *" He further testified that at a meeting the following day at the Stuart Street office at which United's district sales manager and the two union officials were also present, the district sales manager asked Buffum (the other union official) " 'What would you like us to do.' " Buffum suggested that United hire a cleaner who was a union employee. After being told that United was satisfied with University's services and that the quarrel was with the cleaner and not with United, Buffum " * * * again pointed out that we would have pickets in front of our places of business and that perhaps we wouldn't like that and we agreed that we wouldn't."

at United's Statler-Hilton and Federal Street offices. They walked back and forth in front of the entrances carrying signs which read: "The contract cleaners employed here are not members of Local 254 AFL–CIO." No literature was passed out nor did the pickets engage any one in conversation. They remained at their stations from about 9 a. m. to 4:30 p. m. for a period of two weeks.

The Union contacted the management of A & P only once—by telephone. The conversation was similar to those with United.[4] On April 22 two pickets appeared at A & P's Massachusetts Avenue store. They walked back and forth in front of the customer's entrance carrying signs identical with those used at United. As in the picketing at United, no literature was passed out and the pickets did not engage anyone in conversation. The pickets patroled the store entrance from 9 a. m. to 4:30 p. m. for about a week. On these facts the Board found that the Union violated § 8(b) (4) (ii) (B) of the Act.

■■■ This court's function under the Act is merely to determine whether on the record taken as a whole there is substantial evidence to support the Board's findings. Universal Camera Corp. v. N.L. R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); N.L.R.B. v. Lipman Brothers, Inc., 355 F.2d 15, 20 (1st Cir. 1966). In N.L.R.B. v. United Ass'n of Journey. & App. of Plumbing, Etc., 320 F.2d 250, 253 (1st Cir. 1963), speaking of Section 8(b) (4) (ii) (B), we said: "The section seeks to avoid the implication of employers in disputes not their own where an object of the union conduct is to force the cessation of business relations between such neutral employers and any other person." As the court said in International Brotherhood, etc. v. N.L.R.B., 181 F.2d 34, 37 (2d Cir. 1950), "The

gravamen of a secondary boycott is that its sanctions bear, not upon the employer who alone is a party to the dispute, but upon some third party who has no concern in it. Its aim is to compel him to stop business with the employer in the hope that this will induce the employer to give in to his employees' demands."

In the instant case it is clear that the respondent Union sought to involve both United and A & P in its dispute with University. Obviously the pre-picketing conversations with United and A & P were intended to force or require these two neutral companies to cease doing business with University. The Union's real objective was made clear at the last meeting with United. When asked what the Union would like United to do, its reply was to hire a union cleaner. When told that United was satisfied with University, the Union threatened United with picketing. Within a week the Union carried out this threat.

■■■ The A & P pre-picketing conversation is no less a violation simply because only one brief conversation was involved. The Union contends, at least by implication, that the content of that conversation does not amount to a threat. We disagree. The language used[5] must be taken in the circumstances surrounding the case. Words harmless in themselves can take on a sinister meaning in the context in which they are used. Local 901, Internat'l Bro. of Teamsters, Etc. v. Compton, 291 F.2d 793, 797 (1st Cir. 1961). For one thing, there was a labor dispute going on between the Union and University and that alone puts the activities of the Union with reference to University's customers in a different light. The implications of the conversation are clear.

■■■ We agree with the Board that there is sufficient evidence to indicate

4. A & P's divisional purchasing agent who received the call reported the conversation as follows: "He said they had just heard from the union headquarters * * * that they had permission to picket University Cleaning and I said, 'So what has that got to do with me?' Well, he said that it might involve the picketing of some of our stores. So I said, 'Do you have a right to picket our stores, you have no fight with us?' He said, 'We have permission to, I didn't say we were going to, but we have permission to do it.'"

5. See n. 4.

that this one telephone conversation with A & P and the conversations with United referred to above [6] were of a threatening nature with an object of forcing or requiring these companies to cease doing business with University and thus violated § 8(b) (4) (ii) (B) of the Act. N.L.R.B. v. United Ass'n of Journey. & App. of Plumbing, Etc., supra; Burr v. N.L.R.B., 321 F.2d 612 (5th Cir. 1963).

Now let us consider the picketing itself. The Union claims the picketing here was merely informational in nature; that in picketing United and A & P the Union was merely following the product [7] to the appropriate locations where the public could be alerted to the facts. In support of this contention the Union relies on N.L.R.B. v. Fruit and Vegetable Packers, etc. (Tree Fruits), 377 U.S. 58, 84 S.Ct. 1063, 12 L.Ed.2d 129 (1964), which held that peaceful secondary picketing of retail stores aimed *solely* at persuading customers not to buy a particular product, is not a violation of Section 8(b) (4). We do not think the rationale of that case is applicable here.

■ With respect to respondent's argument that it was engaged in lawful "common situs" picketing, we need only mention that the employees of the primary employer were never present during the picketing,[8] and the signs carried by the pickets failed to identify the primary employer as the target of the dispute. Thus, the standards set up by the Board in Sailors Union of the Pacific (Moore Drydock), 92 N.L.R.B. 547, were not met. N.L.R.B. v. Plumbers Union of Nassau County, Local 457, etc., 299 F.2d 497, 501 (2d Cir. 1962); N.L.R.B. v. International Hod Carriers, Etc., 285 F.2d 397, 400–402 (8th Cir. 1960).

Upon an examination of the entire record we conclude that the Board's findings are supported by substantial evidence.

A decree will be entered enforcing the order of the Board.

6. See n. 3.

7. The cleaning service.

8. With the exception of the window washers who work at A & P during store hours only about one-half hour a week, usually on Tuesday morning.