TRUCK DRIVERS, OIL DRIVERS, FILL-ING STATION AND PLATFORM WORKERS LOCAL NO. 705 OF the IN-TERNATIONAL BROTHERHOOD OF TEAMSTERS, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD.

No. 73–2028.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 18, 1974.

Decided Nov. 19, 1974.

Sheldon M. Charone, Chicago, Ill., with whom George Kaufman, Washington, D.C., was on the brief, for petitioner.

Laura Ross Blumenfeld, Atty., N. L. R. B., with whom John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel and Robert A. Giannasi, Asst. Gen. Counsel, N. L. R. B., were on the brief, for respondent.

Before LEVENTHAL and MacKINNON, Circuit Judges, and MERHIGE,* United States District Judge for the Eastern District of Virginia.

PER CURIAM:

Petitioner, Local 705, seeks review by this court of a Decision and Order of the National Labor Relations Board, 205 NLRB No. 40 (1973), directing the union to cease and desist from the unfair labor practice found by the Board—of threatening to picket the premises of Johns-Manville with the object of requiring Johns-Manville to cease doing business with Trumbull, an employer that had a contract dispute with another Teamster local, Local 743. The Board cross-petitioned for enforcement.

■ We will not stop to repeat facts adequately set forth in the opinion of the Board and of its Administrative Law Judge (ALJ). Petitioner asks us to hold that the ALJ erred in the resolution of credibility so as to credit the testimony of Winkworth, the Johns-Manville employee relations manager, that on December 14, 1972, union business representative Jannotta warned that Local 705 would throw up a picket line at Johns-Manville's main gate if it continued to accept deliveries from Trumbull, and that it would take some time to arrange for this picket line to be removed. The ALJ, who heard the witnesses, credited Winkworth as a "wholly believable witness" (ALJ Dec. p. 10) and found Eyster, the other witness for the General Counsel, more believable than the Union witnesses, Jannotta and Taylor. Obviously, the court cannot interfere with such determinations by an administrative agency, and must find there was substantial evidence to support the Board's order.

■ The petitioner also contends that the conduct was de minimis and the case was moot before the complaint issued. A single remark may be treated as lacking the force of substantial evi-

* Sitting by designation pursuant to 28 U.S.C. § 292(d) (1970).

dence when it is isolated and is depicted against a background of correct conduct. *See* J. J. Newberry Co. v. NLRB, 442 F. 2d 987, 901 (2d Cir. 1971). But even a single remark may have the implication, in context, of a threat that the Board may condemn. NLRB v. Local 254, Building Service Employees International Union, 359 F.2d 289, 291 (1st Cir. 1966).[1] Here the Board was within its discretion in treating as substantial a threat to picket Johns-Manville's main gate, with 100 or more trucks passing daily into a facility at Waukegan with limited storage capacity. The context is not one of inadvertence, but of a planned visit paid to Johns-Manville's purchasing agent by Jannotta, together with union steward Taylor and another representative, Creedon, after receiving instructions from the union's secretary-treasurer.

As to the issue of mootness, petitioner relies on the fact that on December 29, 1972, the attorney for the union wired Johns-Manville's Winkworth that Local 705 had no intention of picketing but merely sought cooperation, which was at Johns-Manville's choice. This wire states that Local 705's representatives "were instructed not to use the word 'picket' and merely to ask for your cooperation". However, the record also includes Mr. Jannotta's testimony that he did not receive any instructions as to what action to take if Johns-Manville did not "cooperate."

While petitioner's brief claims that the word "picket" was introduced by Winkworth, this is of no consequence if it was adopted by Jannotta and the substance of the conversation was indeed about the possibility of picketing. Certain it is that Jannotta did not expressly state that all that was sought was "cooperation" which Johns-Manville was absolutely free to extend or withhold without any reprisal from the Union. And insofar as mootness is concerned, the union wire of December 29 came after the union had received, on December 21, a copy of the charge filed by Johns-Manville on December 19. This has a bearing on the Board's decision to conclude whether the repudiation was timely and effective, or whether it was really a response to the imminence of the Board's proceeding and bore a meaningful possibility of renewal in some form.[2]

Board member Penello's dissent concluded that a remedial order should be withheld. He stressed that the threat of picketing was repudiated before Johns-Manville was schedule to receive further Trumbull deliveries. Johns-Manville had shut down its roofing operation for preventitive maintenance between December 16, 1972, and January 2, 1973. And so there were no end-of-December shipments.

1. In that case, the remark was: "We have permission to [picket], I didn't say we were going to, but we have permission to do it." 359 F.2d at 291 n. 4.

In another case, the General Counsel decided not to proceed on a charge brought under section 8(b)(4)(ii) that arose out of a union's statement to an employer that picketing would begin "Thursday morning, if everything goes well with our lawyers." NLRB, Quarterly Report of the General Counsel, pt. II, at 8–13 (Aug. 30, 1974). The General Counsel saw this statement as a "conditional threat to picket . . . consistent with an intent to recommend picketing to the Union's attorney, a recommendation which could either be accepted or rejected." NLRB, *supra*, at 9. In the case under review, the union's threat to picket was not expressly conditioned on the approval of union attorneys, but could be reasonably understood by the employer to be conditioned only on the employer's compliance with the union's request.

2. NLRB v. Great Atlantic & Pacific Tea Co., 409 F.2d 296 (5th Cir. 1969). There had been no picketing. But of course, the mere fact of picketing, though terminated, would cause trauma, and was indeed the core of the threat. In NLRB v. Columbia Typographical Union No. 101, I.T.U. 152 U.S. App.D.C. 365, 470 F.2d 1274, (1972), the court stated that no suggestion of bad faith is involved where local's firing of a supervisor is reversed by the international union "long before issuance of the complaint . . . by the General Counsel."

■ The Board has latitude not to burden itself and the courts with "infinitesimally small abstract grievances."[3] If the court had the judgment to make, the present case seems a ripe candidate for informal handling, following formal complaint, without cluttering the dockets for administrative hearings and judicial consideration. But where to draw the line of matters trivial in their impact is primarily a task for the Board and not for the court. We are without warrant to mandate its dismissal in the case at bar.

The union's petition for review is denied. The Board's petition for enforcement is granted.

So ordered.

3. NLRB v. Columbia Typographical Union No. 101, I.T.U., *supra*; Dallas Mailers Union, Local No. 143 v. NLRB, 144 U.S.App. D.C. 254, 257, 259, 445 F.2d 730, 733, 735 (1971). In such cases, discretion may be exercised by the General Counsel in withholding a complaint, or by the Board in finding that there is no substantial evidence of a concrete violation, without contending that after a hearing establishing a violation it has discretion to waive the provision of § 10(c) of the Act, 29 U.S.C. § 160(c) (1970), that if the Board shall be of the opinion that a person has engaged in unfair labor practices it shall issue a cease and desist order. International Woodworkers of America, AFL–CIO, Local 3–10 v. NLRB, 127 U.S.App.D.C. 81, 83, 380 F.2d 628, 630 (1967).