**GOTHAM LOGISTICS, INC., Bestway Services, Inc. and Bestway Logistics Transportation, Inc. Plaintiffs,**

v.

**LOCAL 917 INTERNATIONAL BROTHERHOOD OF TEAMSTERS, and John Vacca, individually and in his capacity as Secretary–Treasurer of Local 917, Defendants.**

No. CV 06–0634.

United States District Court,
E.D. New York.

Sept. 8, 2006.

Kaufman Schneider & Bianco, LLP by Richard M. Howard, Esq., Woodbury, NY, for Plaintiff.

Belson, Campbell & Szuflita by Gene M.J. Szuflita, Esq., New York City, for Defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Gotham Logistics, Inc. Bestway Services, Inc. and Bestway Logistics Transportation, Inc. ("Plaintiffs") commenced this action pursuant to the Labor Management Relations Act of 1947, 29 U.S.C. § 187 29 U.S.C. § 187(a) ("Section

187"). The complaint alleges that Defendant Local 917 of the International Brotherhood of Teamsters and its Secretary–Treasurer (collectively "the Union") have engaged in an unfair labor practice described in 29 U.S.C. § 158(b)(4)(i)(B) ("Section 158"). Plaintiffs' complaint also contains a state law cause of action for tortious interference with contract. Presently before the court is the motion of Defendants, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the case for failure to state a claim. For the reasons set forth below, the motion is granted.

## BACKGROUND

### I. Background

#### A. The Parties and the Allegations of the Complaint

Plaintiffs are trucking companies providing service to various companies in the New York area. In 1999, Plaintiffs entered into an agreement with Premiere Wine and Spirits ("Premiere") to provide trucking services. At the time of this agreement, Premiere was a signatory to a collective bargaining agreement ("CBA") with the Union. The CBA allowed for the use of outside general trucking service providers for work beyond a set guaranteed employee work list.

In 2005, Premiere was purchased by a company known as SWS. SWS became bound to the terms of the existing CBA. Plaintiffs entered into an agreement with SWS to provide the same services that it had previously provided for Premiere. In October of 2005, SWS entered into a Memorandum of Understanding for a new CBA with the Union. After negotiating the new CBA, SWS began to hire more employees to perform trucking services that had previously been performed by Plaintiffs. The effect of SWS using more in-house employees to perform trucking services is, obviously, less of a need to hire Plaintiffs to perform outside trucking services. In short, the Union's gain of additional trucking jobs is, inevitably, Plaintiffs' loss of those jobs. Plaintiffs allege that the Union's negotiation of an agreement allowing SWS to hire more in-house, unionized, employees to perform trucking services (and therefore have less of an need for Plaintiffs' services) amounts to coercive activity that is an unfair labor practice prohibited by Section 158.

### II. The Motion to Dismiss

The Union moves to dismiss the federal claim for failure to state a claim. Specifically, the Union argues that no claim is stated where, as here, the Union's activities (in negotiation of the new CBA) were directed only toward SWS, the entity with which it has a direct relationship and not against an uninvolved third party. Dismissal of the remaining state causes of action is sought on the ground that they are preempted by federal labor law. In the event that the motion to dismiss is denied, the Union argues that the case may not proceed without the addition of SWS as a necessary party.

In opposition to the motion, Plaintiffs focus on the intent of the Union and argue that the Union is not attempting to preserve work but instead, trying to induce SWS to alter its subcontracting policy for the "sole purpose of causing SWS to cease doing business with Plaintiffs ...." It is argued that the Union has "coerced" SWS into eliminating non-union work in favor of union employees and that such coercion amounts to unlawful activity. Plaintiffs do not argue the preemption issue. Instead, it is argued, simply, that if the court retains jurisdiction over the federal claim, it should exercise pendent jurisdiction over the state claims. Finally, it is argued that SWS is not an indispensable party.

After outlining applicable law, the court will turn to the merits of the motion.

## DISCUSSION

### I. *Legal Principles*

#### A. *Standard for Motions to Dismiss Pursuant to Rule 12(b)(6)*

A motion to dismiss is properly granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Weixel v. Board of Educ. of New York*, 287 F.3d 138, 145 (2d Cir.2002). When ruling on a motion to dismiss, the court must accept as true all factual allegations in the complaint. All reasonable inferences must be drawn in favor of the non-moving party. *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College*, 128 F.3d 59, 62 (2d Cir.1997). It is not for the court to "weigh the evidence that might be presented at trial; the Court must merely determine whether the complaint itself is legally sufficient ..." *Rodolico v. Unisys Corp.*, 96 F.Supp.2d 184, 186 (E.D.N.Y.2000).

#### B. *Section 158*

The unfair practice alleged to have been engaged in by the Union here is that of engaging or inducing any individual to refuse to "transport or otherwise handle any work" or to "threaten, coerce, or restrain any person" or force or require "any person to cease ... transporting ... the products of any other ... manufacturer .... where the object of such activity is to force an individual to stop dealing in the products of any other manufacturer or to or to cease doing business with any other person ...." 29 U.S.C. § 158(b)(4)(i)(B). Such activity is commonly referred to as unlawful secondary activity. Where, as alleged here, the activity is a refusal to deal in the products of another, the unlawful activity is referred to as an unlawful "secondary boycott." *See Bermuda Container Line, Ltd. v. International Long-shoremen's Ass'n*, 192 F.3d 250, 256 (2d Cir.1999).

■ The distinction between primary activity which is lawfully aimed at the union's employer, and unlawful secondary activity can, at times, be difficult to draw. When determining whether activity directed at a third party falls within the prohibition of Section 158, the Supreme Court has noted that the "touchstone" is whether the activity "is addressed to the labor relations of the contracting employer vis-a-vis his own employees." *National Woodwork Mfrs. Ass'n. v. NLRB*, 386 U.S. 612, 644, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967). It is clear that union activity directed toward preservation of work by unionized employees constitutes primary activity and is therefore not unlawful. *See National Woodwork*, 386 U.S. at 646, 87 S.Ct. 1250.

■ Plaintiff seizes upon the "preservation of work" language in *National Woodwork* and argues that since the Union activity here is aimed at increasing the amount of union jobs (as opposed to merely "preserving" the jobs it already controls), the negotiation of the new CBA is activity prohibited by Section 158. The court holds, however, that it is not the distinction between preserving work and obtaining additional work that is determinative of whether union activity is prohibited. Rather, the issue is whether the activity is sanctioned primary activity aimed at putting pressure on an employer with respect to his own employees, or activity with respect to the employees of another, unrelated third party. *Bermuda Container*, 192 F.3d at 256. It is only in the latter case that union conduct amounts to "secondary" activity that is prohibited by Section 158. *See R.M. Perlman, Inc. v. New York Coat, Suit, Dresses, Rainwear & Allied Workers' Union*, 33 F.3d 145, 154 (2d Cir.1994).

Lawful union activities are aimed at their own members' working conditions

and not "to satisfy objectives elsewhere." *Id.* The Second Circuit has noted that Section 158 is violated "only where an agreement not to use the products of another employer is designed to bring pressure on *that* employer with respect to *his* employees." *NLRB v. Local Union 28, Sheet Metal Worker's Int'l Ass'n.,* 380 F.2d 827, 830 (2d Cir.1967); *see also Silverman v. Sheet Metal Workers' Internat'l. Ass'n.,* 1991 WL 274334 *2 (S.D.N.Y.1991). Where the union's activities are to "benefit the employees of the bargaining unit represented by the union, it is 'primary' and in such event does not fall within the proscription of [Section 158], whereas if the object is the application of pressure on an outside employer in order to require him to accede to union objectives it is 'secondary' and within the prohibition of [Section 158]." *Bermuda Container,* 192 F.3d at 256, quoting, *A. Duie Pyle, Inc. v. NLRB,* 383 F.2d 772, 776 (3d Cir.1967).

II. *Disposition of the Motion*

■ Construing the facts set forth in the complaint as true, Plaintiffs allege only that the Union negotiated a new contract with SWS and, as a result of that contract, SWS agreed to hire additional Union employees to perform trucking services. SWS is therefore no longer in need of Plaintiffs' trucking services to the same extent as in the past. While it is true that the Union's negotiation of a new CBA affects the business of the Plaintiffs, that negotiation was aimed at SWS, the Union members' employer, and not at Plaintiffs or with respect to Plaintiffs' treatment of its employees. As such, the Union activity complained of is lawful primary activity and not, as alleged in the complaint, a secondary boycott on the trucking services of Plaintiffs.

Having dismissed Plaintiffs' federal claim, the court declines to exercise jurisdiction over any state claim and therefore dismisses the action in its entirety. The court notes that Plaintiffs complain that the Union activity caused SWS to breach its agreement with Plaintiffs. To the extent that any breach of contract action exists, that claim, along with any other viable state claim that Plaintiffs may have against SWS (which is not a party to this action), can be pursued by Plaintiffs in the state court.

### CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is granted. The Clerk of the Court is directed to terminate the motion and close the file in this case.

SO ORDERED.